# Illinois Official Reports

## Appellate Court

***People v. Jaynes*, 2014 IL App (5th) 120048**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE S. JAYNES, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-12-0048 |
| Rule 23 Order filed<br>Motion to publish<br>granted<br>Opinion filed | May 6, 2014<br><br>June 2, 2014<br>June 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld defendant's convictions on 10 counts of possession of child pornography, since the trial court did not abuse its discretion in denying his motion to suppress the search warrant that led to the discovery of the pornography on his computer on the ground that the warrant was stale, the State proved beyond a reasonable doubt that he possessed child pornography by actual and constructive possession, regardless of his attempts to blame his wife and stepchildren for placing it in his computer, and the trial court's admission of a detective's testimony regarding distinctiveness and similarities in the handwriting on the labels of CDs was not an abuse of discretion, even though the detective had no handwriting-comparison qualifications. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 06-CF-1073; the Hon. James Hackett, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Curtis L. Blood, of Blood Law Office, of Collinsville, for appellant.

Thomas D. Gibbons, State's Attorney, of Edwardsville (Patrick Delfino, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE STEWART delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Goldenhersh concurred in the judgment and opinion.

## OPINION

¶ 1 The defendant, George S. Jaynes, was charged with 10 counts of possession of child pornography in violation of section 11-20.1(a)(6) of the Criminal Code of 1961 (720 ILCS 5/11-20.1(a)(6) (West 2006)). Following a bench trial he was found guilty and sentenced to 30 months' probation. The defendant filed a timely notice of appeal. We affirm.

¶ 2 BACKGROUND

¶ 3 A bench trial was held on August 1, 2011. Detective Sergeant David Vucich from the Madison County's sheriff's department was accepted to testify as an expert in the area of computer forensics. He stated that he had received computer forensic training from the National White Collar Crime Center, the United States Marshals Service, the FBI, several other agencies, and vendor-specific training on the forensic program Forensic Tool Kit (FTK). He was a member of the major case squad, was assigned to the Technical Operations Group, and dealt primarily with cell phone and high-tech devices as they relate to an investigation. He was also a member of the FBI cyber crime task force, concentrating on cases involving child exploitation such as child pornography and indecent solicitation of children by adults over the Internet.

¶ 4 Detective Vucich testified that on March 20, 2006, he received a complaint about the defendant. The complaint was received through the National Center for Missing and Exploited Children (NCMEC). In his affidavit attached to the complaint for a search warrant, Detective Vucich wrote, "The anonymous complainant alleged [the defendant's] ex-wife found child pornography on his computer and he has a history of molesting children; however, no one has ever turned him into [*sic*] police authorities." As a result of receiving the tip, on May 12, 2006, Detective Vucich and Detective Cromer went to the defendant's residence. They arrived sometime in the morning between 9 a.m. and 10 a.m. Dogs were barking outside the home, so the detectives honked the car horn until the defendant came outside. Detective Vucich stated

that they told the defendant that they were investigating a complaint that he had inappropriate images located on his computer. The defendant told the detectives that he had not opened the Internet connection, that he was in the process of cleaning out his computer system, and that some ex-family members had used his computer. The defendant told Detective Vucich that there was a one-month period of time from February 2005 until March 2005 when the computer was not in his possession.

¶ 5 Detective Vucich asked the defendant specifically about child pornography. The defendant responded that no child pornography images would be found on his computer. Detective Vucich asked the defendant if they could go inside his home to discuss the matter further. The defendant denied the officers entry into his home and consent to search his computer.

¶ 6 Detective Vucich testified that he did not want to take the anonymous complaint at face value and that he wanted to corroborate some of the information. He decided that the defendant's ex-wife, Paula Lynn Juengel, would be the best source of additional information. Detective Vucich interviewed Paula, and she indicated that she had previously seen child pornography on the defendant's computer. He asked her whether she was the person who reported the anonymous tip to NCMEC, and she replied in the negative.

¶ 7 Detective Vucich applied for a search warrant. The search warrant application was granted, and he returned to the defendant's residence around 3 p.m. Detective Vucich testified that they searched a bedroom with a computer in it. The room was "kind of in disarray." He seized numerous CDs, floppy disks, and portable media from a wooden bookcase stand in the room, the computer tower, CDs and digital media from a three-drawer plastic file cabinet in the room, file folders from a plastic bin, and a brown paper bag containing 39 CDs, 37 3½-inch floppy disks, and an envelope containing a circuit board.

¶ 8 On October 14, 2009, the defendant filed a motion to suppress evidence. On November 6, 2009, the trial court heard arguments on the motion to suppress. The court denied the motion to suppress on the grounds that probable cause existed for the issuance of the warrant.

¶ 9 Detective Vucich testified that he found CDs in the room with the computer that contained images of young prepubescent and just-pubescent children engaged in sexual acts with adults, a young female exposing her genitalia and breasts, a prepubescent girl with no breast development lying on her back with her genitalia and breasts exposed, a prepubescent female with genitalia and breasts exposed sitting on a couch, a prepubescent female with no pubic hair on a couch with her legs spread open and genitalia and breasts exposed, preteen boys and girls engaged in sexual acts, two nude Asian girls ages 6 to 8 leaning against a tree, a girl age 8 to 10 with both genitalia and breasts exposed, and a young prepubescent girl with her genitalia partially exposed and her left breast exposed. Detective Vucich admitted that he only found these images on disks and did not find them on the hard drive. On cross-examination he was asked if it was possible that someone could have planted the disks in the areas where they were found, and he stated it was possible. Detective Vucich testified that he found a photo of a prepubescent girl with genitalia and breasts exposed on the defendant's hard drive. This photo was found hidden in the virtual memory of the hibernation mode.

¶ 10 Detective Vucich testified that they seized a Compaq Presario computer with a 20-gigabyte hard drive media storage. He stated that he made an image of the hard drive. He stated that

"thousands upon thousands" of images were recovered from all the media. Of those images, he flagged a couple thousand images that were noteworthy because they appeared to be illegal images of males or females under the age of 18 depicted in a sexual act or displaying nudity.

¶ 11    Detective Vucich testified that one of the file folders recovered from a plastic bin contained a piece of paper with handwritten notes about what "appeared to be like passwords as it relates to specific Web Sites and E-mail addresses." The file contained additional papers with the user name "tampergeorge" including a Yahoo mail page with the email address of Tampergeorge@ameritech.net, a computer-generated printout of tax information that contained the user name tampergeorge, a United Healthcare statement with handwritten notes relating to the user name tampergeorge, and a Bank of America statement with an email address tampergeorge@prodigy.

¶ 12    The defendant testified that he worked on the railroad for 27½ years. He operated a tamper as part of his job. He admitted using user name Tamper George for many different online services in the last 10 to 15 years. He stated that the sheet of passwords was not his. He said that it may have been a scrap paper he was writing on, but someone else had written on it too.

¶ 13    Detective Vucich was shown two labels on CDs and asked if there was any similarity between them. He testified that "the handwriting on there looks like the E's are kind of distinctive." The defense attorney objected on the ground that Detective Vucich was not qualified as a handwriting expert. The court overruled the objection. Detective Vucich was shown the handwritten page of passwords and was asked if on the handwritten word "George" there was anything about the last E that looked familiar. He stated "the last E appears similar to that of handwriting–." The defense attorney objected that Detective Vucich was drawing a conclusion and that he was not qualified as a handwriting expert. The trial court overruled the objection. Detective Vucich went on to identify certain Es that looked similar. He also admitted that not all the Es were the same.

¶ 14    Detective Vucich testified that in a folder titled "Lamisil" he found email printouts from various news groups, all with the heading Tamper George. An August 1, 2000, email printout showed a picture of a young female, approximately 14 years old, with her breasts exposed. An email printout dated September 22, 2000, had a picture of a 13- to 14-year-old nude female with her hands behind her back holding onto a bed rail and leaning forward. An email sent February 20, 2001, showed a picture of a young female approximately 12 years old with no breast development and with her vagina and breasts exposed who appeared to be sucking on something. The defendant denied subscribing to any erotic news groups.

¶ 15    Detective Vucich testified that he analyzed all the CDs and the hard drive using the FTK program. The analysis identified the location of the file, file creation date, access date, modification date, and file size. Detective Vucich found images on the computer that matched the email printouts.

¶ 16    Detective Vucich testified that there was sexual content within the emails to the defendant that appeared to be current. He flagged 83 emails of interest, all of which were directed to Tampergeorge@ameritech.net.

¶ 17 Detective Vucich noted that the defendant had used some programs to wipe particular sectors of his hard drive clean. Detective Vucich stated that typically when you delete something or send it to the recycle bin, the first character of the deleted file is removed and the file is sent to deleted space. The contents of the file remain in the deleted space. The programs that the defendant used did not just send the file to deleted space, but deleted even remnants of the data. Detective Vucich testified that the FTK program is able to see and interpret files in the deleted space, but cannot find files that were deleted using a wiping program.

¶ 18 Detective Vucich testified that four to five hours elapsed between the time he first visited the defendant's house and the time he returned with the search warrant. The evidence shows that during that interval, the defendant deleted files. Detective Vucich stated that he looked on the Windows operating system and it showed that file names indicative of pornography were accessed. It showed the file path that the files were accessed from. Detective Vucich manually navigated to the file path and the files were no longer there. During his search of allocated space on the hard drive he was unable to find any files matching the names of the files accessed during the time that elapsed between when he first went to the defendant's house and when he returned with a search warrant. He stated that this was consistent with the files having been deleted with the wiping program.

¶ 19 Detective Vucich testified that he looked at the index file. That file contained recent locations like websites that the user visited or locations of files they visited. Once a user visits the location, an entry is made in the index file, similar to a card catalog file. The operating system will keep track of the time and date through the basic input/output system. Detective Vucich testified that he found a link file created on or about April 13, 2006, on the defendant's hard drive that contained an erotic story about statutory rape. His defense attorney objected on the basis of relevance. The State argued that it was relevant because the defendant claimed he did not possess child pornography, yet in the days before the police came to his house, he was reading text files about sex with small children. The State argued that it went to the defendant's state of mind, lack of mistake, and intent. Defense counsel argued that the probative value was not as great as the prejudice to the defendant. The trial court overruled the objection stating that it was relevant.

¶ 20 Detective Vucich testified that he found a link file created on May 6, 2006, containing stories about adults having sex with children between the ages of 6 and 12 years. Defense counsel objected to the relevance. The State argued that it was circumstantial evidence going to the defendant's guilt or innocence. The court overruled the objection finding that the relevance was minor and the prejudicial value was none.

¶ 21 Detective Vucich testified he found a link created on May 6, 2006, to a story about incest and sex with young children. Defense counsel objected as to its relevance. Defense counsel argued that possession of such stories is not illegal and is not evidence against the defendant that he committed the offenses with which he was charged. The trial court overruled the objection. Detective Vucich stated he found a link accessed on May 8, 2006, to a file about a resident nurse who molested 12-, 14-, and 15-year-old girls. Defense counsel objected, and the court overruled it. Detective Vucich testified that there was a link accessed on May 8, 2006, to

a story called "Preschool Fun with Teacher" about adults having sex with young children. Defense counsel objected, and the court overruled it.

¶ 22    When asked why in April 2006 his computer created a link file to stories about statutory rape, the defendant responded that he "would have been downloading a lot of stories to try to fill up the computer hard drive." When asked why he was downloading stories about statutory rape and having sex with five-year-old kids, he said it was "the easiest thing to come by at the time." He went on to say that it was the easiest thing to come by to fill up the hard drive so there was no space left for anybody to place anything on it.

¶ 23    Detective Vucich testified that on the CD labeled "old comp prob" or "program data" he found a website newsletter containing case studies about court trials of teacher-teenage love affairs. He described the newsletter as articles about molestation acts and case law. Detective Vucich testified that he found a text file called the Pedophile's Handbook on the defendant's hard drive. Defense counsel objected to the relevancy of the material, arguing that the possession of that material was not against the law and that the prejudicial value far outweighed the relevance. The trial court overruled the objection, stating that it had some probative value because it showed motive, lack of mistake, and intent. The last time the file was accessed was March 2, 2006.

¶ 24    The defendant and Paula separated in February 2005. The defendant moved out of the marital residence at that time. His computer remained in the home until March 2005, when Paula returned it to him. It then remained in his exclusive possession. Paula testified that she continued to live in the house until September 2005, when their divorce was settled. On October 21, 2005, the house was transferred to the sole possession of the defendant, and he moved back into the home in November 2005.

¶ 25    The defendant testified that he did not make CDs of child pornography and put them in the house, nor did he download child pornography on his computer. He stated that for at least three weeks after he left the house he did not have access to his computer and that for months he did not have access to the house because Paula had possession of it. He denied putting a program on his computer to delete files.

¶ 26    Paula testified that one of the reasons she filed for divorce was that she came home early one day and saw child pornography on the defendant's computer. Paula stated that she told her attorney about the child pornography. Her attorney advised her to make copies of some of the pictures. Paula testified that her son from a prior marriage, Matthew Aller, logged onto the computer and found columns and columns of child pornography. Matthew testified that he copied some of the photographs onto floppy disks. He stated that he did not copy anything onto CDs. He gave the copies to his mother to give to her attorney.

¶ 27    Matthew testified that other than the time he copied the images onto the floppy disks, he never looked at child pornography on the computer. He stated that he never had access to the computer. He stated that he had his own computer and used his mother's computer. He denied ever putting child pornography on the defendant's computer or putting it on CDs and placing it in the room.

¶ 28    Matthew testified that he lived with his mother and the defendant from 1999 until 2002. He moved out for about one year and then moved back in for approximately one year. He testified that he moved out of the house for a year because he did not feel comfortable living with the defendant because the defendant had molested him as a child. The defendant testified that he had a problem with Matthew. In 2003 or 2004, he had an order of protection issued against Matthew. He stated that he was working outside on the driveway and Matthew came up and "just started beating on me."

¶ 29    Matthew testified that twice when he walked past the computer to his room, he saw the defendant looking at photographs of naked six- or seven-year-old girls. Other times, the defendant would turn off the monitor when he entered the room. Matthew stated that he told his mother about it before he left for the Navy. The defendant denied that Matthew could have ever seen him looking at child pornography. He stated that he did not like to be around Matthew and that he never had any child pornography on his computer.

¶ 30    Edward Aller, Paula's son from a prior marriage, testified that he lived with his mother and the defendant for three or four months in 1999. He stated that there were multiple computers in the house. He never observed child pornography on the defendant's computer. He denied placing child pornography on the defendant's computer or copying child pornography onto CDs and placing them in the computer room.

¶ 31    The defendant testified that he received an email from Paula stating that "she noticed [he had] been taking stuff out of the house, and that she would go to the FBI" with child pornography she claimed she found on his computer. He testified that she sent him additional emails threatening that she had more of his child pornography to use against him. Paula admitted that she threatened to report the defendant to the police or FBI in an effort to move the divorce along. She denied making the anonymous tip to NCMEC. The defendant testified that on the day of the house closing, Paula handed him an envelope and said: "[H]ere's the child pornography. I have more. Be careful." He stated that he did not open the envelope and instead threw it away. Paula admitted that when they closed on the house she handed him an envelope containing the floppy disks she made of the child pornography on his computer. She denied threatening him then.

¶ 32    The trial court took the matter under advisement. The court found the defendant guilty on all 10 counts of child pornography.

¶ 33    On December 15, 2011, the defendant filed a posttrial motion. He alleged in part that the trial court erred in finding him guilty because the State presented insufficient evidence to prove him guilty beyond a reasonable doubt, that the court erred in denying the motion to suppress evidence, that the court erred in allowing Detective Vucich to testify as to the similarity in various handwriting samples, and that the court erred in allowing evidence of several "erotic stories." On January 5, 2012, the defendant filed a *pro se* posttrial motion. He requested the return of all property not used as evidence in the trial, a complete and unaltered copy of the hard drive, and all bail money. He further requested that he be given unsupervised and unrestricted probation and that no fines be imposed. He requested that he be allowed continued access to the Internet for business purposes. On the same day he filed a second *pro se* posttrial motion. He alleged, in part, that the trial court erred in finding him guilty because the evidence

presented at trial was insufficient to prove beyond a reasonable doubt that the defendant knowingly possessed the items of child pornography. The motions were not ruled on. On January 5, 2012, the defendant was sentenced to 30 months' probation.

¶ 34    The defendant filed a timely notice of appeal.

¶ 35                                              ANALYSIS

¶ 36    The defendant argues for the first time on appeal that because the search warrant was stale, the trial court abused its discretion in denying his motion to suppress evidence. When a trial court's ruling on a motion to suppress involves factual determinations and credibility assessments, the ruling is granted deference because the trial court is in a superior position to determine and weigh the credibility of witnesses, observe the witnesses' demeanor, and resolve conflicts in the witnesses' testimony. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). When a reviewing court reviews a ruling on a motion to suppress involving a question of probable cause or reasonable suspicion, the court should apply *de novo* review to the ultimate finding with respect to probable cause or reasonable suspicion. *Id.* A reviewing court accords great deference to the trial court's factual findings, and will reverse the findings only if they are against the manifest weight of the evidence; however, the reviewing court reviews *de novo* the ultimate question of the defendant's legal challenge to the denial of his motion to suppress. *Id.*

¶ 37    The State argues that because the defendant did not raise the claim that the search warrant was stale as a basis for his motion to suppress, he has forfeited this issue. In his motion to suppress evidence, the defendant argued that the complaint for the search warrant was based on uncorroborated hearsay information, that the complaint and affidavit failed to state evidentiary facts supporting Paula's credibility or the reliability of her information, and that the complaint lacked any sufficient basis upon which a finding of probable cause could be made. The defendant did not argue that the information that formed the basis of the complaint for the search warrant was stale. In his posttrial motion, he argued that the trial court erred in denying the motion to suppress. He did not provide any more details about why the trial court erred in denying the motion.

¶ 38    "Generally, a defendant's argument is forfeited on appeal if it was not raised in the trial court." *People v. Morgan*, 385 Ill. App. 3d 771, 773 (2008). A trial objection and a written posttrial motion raising the issue are required for alleged errors that could have been raised during trial. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The purpose of this requirement is to allow the trial court the opportunity, if necessary, to address and correct errors. *People v. Jackson*, 391 Ill. App. 3d 11, 37 (2009). Because the defendant failed to raise the issue of staleness in either the motion to suppress or a posttrial motion, he has forfeited it. Assuming *arguendo* that the defendant did not forfeit the issue, the information forming the basis for the search warrant was not stale.

¶ 39    "A warrant is stale when too much time has elapsed between the facts alleged in the affidavit in support of the search warrant and the issuance of the warrant." *People v. Donath*, 357 Ill. App. 3d 57, 64 (2005). There is no arbitrary cutoff point expressed in days or weeks beyond which probable cause ceases to exist. *Id.* "Whether probable cause exists to support a

search warrant depends upon whether the totality of the circumstances and facts known to the affiant was sufficient to warrant a person of reasonable caution to believe that the law was violated and that evidence of the violation would be on the premises to be searched." *Id.* at 63-64. In determining the existence of probable cause, the standard is whether there is a probability or substantial chance of criminal activity, not proof beyond a reasonable doubt. *Id.* at 64, 69. "The courts, in deciding the question of probable cause, are not disposed to be unduly technical but, rather, the probabilities considered are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act." *People v. Thomann*, 197 Ill. App. 3d 488, 495 (1990).

¶ 40    The defendant argues that the gap between when Paula claimed she saw child pornography on the defendant's computer and the application for the search warrant was 15 months, which is excessive and makes the search warrant stale. However, the police did not receive a tip about the child pornography until March 20, 2006. The search warrant was issued on May 12, 2006, less than two months after receiving the tip. Paula claimed that she was not the individual who provided the tip. Detective Vucich stated that he did not know who provided the tip.

¶ 41    Computer files have a distinctive nature, especially computer files of child pornography. While staleness is highly relevant to the legality of a search for perishable or consumable objects, it is rarely relevant in the context of computer files. *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012). Deleting a file does not remove it from the computer. *Id.* at 776. It merely removes it from the user interface, and it is generally recoverable by computer experts until it is overwritten. *Id.* Because of overwriting, it is possible that a deleted file will no longer be recoverable from a computer's hard drive, and it is possible that a computer can be sold or physically destroyed, but rarely is this so probable as to destroy probable cause to believe that a search of the computer will turn up the evidence sought. *Id.* at 777. Only in the exceptional case should a warrant to search a computer for child pornography be denied on the ground of staleness. *Id.* at 778. Child pornography is not a fleeting crime; it is generally carried out over a long period of time, in the secrecy of the home, and therefore the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography. *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). People with an interest in child pornography tend to hoard their materials and retain them for a long time. *United States v. Vosburgh*, 602 F.3d 512, 528 (3d Cir. 2010). Because child pornography is illegal, it is difficult and risky to obtain, so collectors are not quick to discard it. *Id.* Information concerning child pornography has a relatively long shelf life and should not be quickly deemed stale. *Id.* at 529. "Images stored on computers can be retained almost indefinitely, and forensic examiners can often uncover evidence of possession or attempted possession long after the crime has been completed." *Id.*

¶ 42    In the instant case, the search warrant was not stale. In the affidavit that Detective Vucich attached to the complaint for a search warrant, he swore that his office received a cyber tip line report from an anonymous complainant that Paula found child pornography on the defendant's computer and that he had a history of molesting children. He stated that he went to see the defendant to ask about the allegations. The defendant tried to provide excuses as to why child pornography could be on his computer. He denied Detective Vucich and his partner access into

- 9 -

his residence and consent to search his computer. Detective Vucich stated that he spoke with Paula, who told him that she had observed digital images on the defendant's computer that she believed to be child pornography. Detective Vucich swore that based on his previous computer training he learned that "digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed or destroyed and is not as volatile as other illegal items like narcotics. [He] learned that when images are stored and/or deleted that they can still be potentially recovered [and] may still reside on the hard drive. [He] also learned that people who possess child pornography will often retain it for long periods of time as a 'trophy' or some type of personal hobby collection." The nature of the crime as set forth in the affidavit provided good reason to believe that child pornography would be present at the defendant's home two months after the police received the tip. Given Detective Vucich's well-reasoned opinions for believing that the child pornography might still be on the defendant's computer, despite the passage of time, the search warrant was not stale. Because the warrant was not stale, the trial court did not abuse its discretion in denying the defendant's motion to suppress evidence.

¶ 43 The defendant argues that the State failed to prove beyond a reasonable doubt that he possessed child pornography. He admitted that the State proved that pornography was located on his computer hard drive and on CDs found in the computer room at his house. He argues that the State failed to prove that he had exclusive recent possession of his home or computer. The defendant argues that the CDs were seized from a room that Matthew had used as a bedroom at one time. He asserts that prior to moving back into the house, he did not have possession of the room or the house, so any inference that he knew what was in the bedroom was doubtful at best. He also argues that the computer was not in his possession from February 2005 until March 2005.

¶ 44 The due process clause of the fourteenth amendment to the United States Constitution requires that to be convicted in a state court, a person must be proven guilty beyond a reasonable doubt of every fact necessary to constitute the crime with which he was charged. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). A reviewing court must ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

¶ 45 It is undisputed that the defendant had exclusive possession of his computer for over one year before the child pornography was found, and exclusive possession of the house where the child pornography was found for six months. Paula filed for divorce in February 2005. She testified that she saw child pornography on the defendant's computer at that time. Paula resided in the home the couple had shared until November 2005. At that time the defendant moved into the house. He testified that from November 2005 until the date of his arrest, he resided in the home alone. The defendant's computer was in the home with Paula for a one-month period of time from February until March 2005. The computer was then returned to the defendant. The police searched the defendant's home and seized the child pornography on May 12, 2006.

¶ 46 Possession of child pornography may be established by proof of either actual and knowing physical possession or constructive possession. *People v. Josephitis*, 394 Ill. App. 3d 293, 299

(2009). Constructive possession has received extensive coverage in narcotics cases, and courts have found those cases helpful in understanding cases involving possession of electronic images such as child pornography. *Id*. Knowledge is rarely shown by direct proof and is usually established by circumstantial evidence. *People v. Fleming*, 2013 IL App (1st) 120386, ¶ 74. It may be established by evidence of the acts, statements, or conduct of the defendant, as well as the surrounding circumstances, which support an inference that the defendant knew that there was contraband in the place where it was found. *Id*. ¶ 75. When contraband is found on premises under the defendant's control, the fact finder may infer that the defendant knew it was there, so long as there are not other circumstances that create a reasonable doubt as to guilt. *Id*. A fact finder may infer control over premises if the defendant lived there. *Id*. Actual possession exists where the defendant exhibits some form of dominion over the contraband, such as trying to hide it or destroy it. *People v. Scott*, 2012 IL App (4th) 100304, ¶ 19.

¶ 47    The State proved both actual and constructive possession of the child pornography. The defendant was the only resident of his home for months before the child pornography was found. For over one year, he had exclusive possession of the computer on which some of the child pornography was found. Because the contraband was found in the defendant's home and on his computer, which were both under his control, the fact finder could infer that he knew it was there. The defendant attempted to conceal the child pornography by filing printouts in misleading folders or CDs. Detective Vucich testified that he found email printouts dated August 1, 2000, September 22, 2000, and February 20, 2001, that showed images of 12- to 14-year-old girls with breasts exposed in a file labeled Lamisil. Detective Vucich testified that the defendant had a wiping program on his computer. He stated that the defendant deleted files from his hard drive during the time that elapsed between when he first came to the defendant's house to question him about possession of child pornography and when he returned with a search warrant. Detective Vucich stated that he examined the defendant's computer and files with names indicative of pornography were accessed during this window of time. He tried to manually navigate the file path, but the files were missing. He testified that this was consistent with the files having been deleted with a wiping program. The defendant's attempts to hide and delete the child pornography show that he exercised dominion over it.

¶ 48    The defendant tries to place suspicion on Matthew and Paula for placing the child pornography in the bedroom and on the computer. He argues that he did not know about the child pornography in the bedroom and that Matthew and Paula had access to the computer and could have put the images on it. Where the defendant relies upon circumstantial evidence to argue that someone else committed the crime, the trier of fact may reject the argument if it is mere surmise or possibility. *Fleming*, 2013 IL App (1st) 120386, ¶ 80. "The trier of fact is not required to disregard inferences which flow normally from the evidence or to accept any possible explanation consistent with innocence." *Id*. Paula, Matthew, and Edward all testified that they did not place child pornography on the defendant's computer or copy child pornography onto CDs and place them in his house. Because the defendant's argument that Paula and her sons downloaded the child pornography to his computer and to CDs which they placed in his home was mere surmise, the trier of fact could properly reject this argument.

¶ 49    When viewed in the light most favorable to the State, a rational trier of fact could find that the defendant possessed child pornography.

¶ 50    The defendant argues that the trial court abused its discretion by allowing Detective Vucich to testify as to his opinion regarding distinctiveness and similarities in handwriting when he possessed no handwriting-comparison qualifications. He asserts that because the identity of who labeled the compact discs was at issue, it was important that the trier of fact confine itself to proper evidence concerning the identity of the writer. The defendant argues that when the trial court went outside proper evidence, it abused its discretion and his trial became unfair and deprived him of his liberty without due process of law.

¶ 51    Whether to admit evidence lies within the sound discretion of the trial court, and its ruling will not be reversed absent an abuse of discretion. *People v. Richardson*, 2013 IL App (2d) 120119, ¶ 10. The Illinois Rules of Evidence 701 provides:

> "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 52    In the instant case, Detective Vucich was shown two labels and asked if there was any similarity between them. He stated, "[W]ell, obviously the labels are the same, but the handwriting on there looks like the E's are kind of distinctive." The defense attorney objected on the ground that Detective Vucich was not a handwriting expert. The court overruled the objection stating, "I think it's very limited observation as to what he sees, not necessarily what, in fact, is there." Detective Vucich testified that on the handwritten page of passwords, "the last E appears similar to that of handwriting–." The defense attorney objected that Detective Vucich was drawing a conclusion and he was not qualified as a handwriting expert. The trial court held: "I don't think it requires an expertise to describe one particular letter. I don't think it is an analysis of handwriting." The court overruled the objection, noting that someone does not have to be an expert in handwriting to point out that certain letters look the same. The court stated, "I'm liking [*sic*] it to similar times when witnesses would in various photographs point out the same vehicle, or what they think is the same vehicle or same shirt coloration." Detective Vucich went on to identify certain Es that looked similar. He also admitted that not all the Es looked the same. Detective Vucich did not offer any conclusion about whether the Es were the defendant's handwriting.

¶ 53    The trial court did not abuse its discretion in allowing Detective Vucich's testimony that certain handwritten Es looked similar. His opinion was based on his personal observation, was one that a person is generally capable of making, and was helpful to a clear understanding of his other testimony. While he stated that certain handwritten Es looked similar, he did not say that all the Es looked the same, and he did not offer any conclusions about whether the Es were written by the defendant.

¶ 54    The defendant argues that the trial court abused its discretion in allowing the State to prove that stories about underage sex were found on the defendant's hard drive. He asserts that

because possession of these stories is legal, the prejudicial value of allowing evidence that he possessed these items outweighed any probative value they had.

¶ 55    Evidence of crimes, wrongs, or acts by the defendant aside from the crime for which he is being tried is inadmissible if the prior conduct is relevant solely to establish the defendant's propensity to commit an offense. *People v. Gumila*, 2012 IL App (2d) 110761, ¶ 37. Such evidence is admissible to show knowledge, intent, absence of mistake or accident, and absence of an innocent mind frame or the presence of criminal intent. *Id.* Evidence that may be relevant for a proper purpose may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* To be relevant, evidence must have a tendency to make the existence of a fact that is of consequence in the case more probable or less probable than it would be without the evidence. *People v. Boyd*, 366 Ill. App. 3d 84, 90 (2006). Even if other-act evidence is relevant, it must not become the focal point of the trial. *Id.* at 94. A danger exists that evidence of other bad acts will persuade the jury to convict the defendant because it feels that the defendant is a bad person deserving of punishment. *People v. Abraham*, 324 Ill. App. 3d 26, 34 (2001). The possibility of prejudice inherent in a jury trial does not exist in a bench trial because it is presumed that the court considers only admissible evidence. *People v. Davis*, 260 Ill. App. 3d 176, 192 (1994). It is within the sound discretion of the trial court whether to admit other-acts evidence. *Gumila*, 2012 IL App (2d) 110761, ¶ 37. An abuse of discretion occurs only when the decision is arbitrary, fanciful, or unreasonable. *Id.*

¶ 56    The other-acts evidence need not be of acts identical to the crime charged in order to be admitted; it only needs to be relevant to some permitted purpose. *Abraham*, 324 Ill. App. 3d at 34. When other-acts evidence is offered to prove intent or the absence of an innocent mental state, a general similarity will suffice. *Id.*

¶ 57    In the instant case, the stories about adult sex with children were admissible for a purpose other than to show the defendant's propensity to commit a crime such as possession of child pornography. The defendant claimed that Paula or her sons put the child pornography images on his computer and downloaded them to the CDs that were found in his house. The stories and the Pedophile's Handbook were downloaded to the defendant's computer long after Paula and her sons lost access to the computer and the house. The defendant also claimed that the stories were the easiest thing to download to fill up his hard drive. However, these stories and the handbook suggest that the defendant sought out sexual material involving children. Other-acts evidence is admissible to show intent, knowledge, and absence of mistake or accident. *Gumila*, 2012 IL App (2d) 110761, ¶ 42. The State may adduce evidence of the defendant's proclivities to prove intent or knowledge in the case *sub judice*. *Id.* ¶ 54. The defendant's demonstrated interest in materials dealing with children engaged in sexual acts tended to show that his accessing illicit images was knowing and voluntary rather than inadvertent. Because the files were downloaded long after Paula and her sons had any access to the computer, they were admissible to reflect the defendant's intense interest in prepubescent sexual material and lessened the probability that Paula or her sons downloaded the illicit images to the defendant's computer or made the CDs and placed them in his house. The evidence of other acts was relevant to show lack of mistake, lack of accident, and intent. The trial court did not abuse its discretion in admitting it.

¶ 58        Finally, the defendant argues that the trial court erred in failing to rule on the defendant's posttrial motion. The defendant was found guilty on August 3, 2011. He did not file his posttrial motion until December 15, 2011. A posttrial motion must be filed within 30 days of the verdict. 725 ILCS 5/116-1(b) (West 2010). Because the defendant did not file his posttrial motion until more than 30 days from the verdict date, his motion was untimely. The defendant concedes that any error in failing to rule on his untimely motion was harmless unless at least one of the other points in his appeal is meritorious. Because the other points in the defendant's appeal were not meritorious, we need not reach this issue.

¶ 59                                        CONCLUSION
¶ 60        For the reasons stated, we affirm the judgment of the circuit court of Madison County.

¶ 61        Affirmed.