2024 IL App (1st) 221849-U

No. 1-22-1849

Order filed December 20, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 00017 |
| | ) | |
| CHARLES BOCOCK, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for possession of child pornography affirmed where the evidence established that he had constructive possession of the digital images found on a computer inside his home.

¶ 2    Following a bench trial, defendant Charles Bocock was convicted of four counts of possession of child pornography. The circuit court merged the offenses into one count and sentenced defendant to seven years' imprisonment. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to directly or exclusively

connect him to the computer that contained the images and failed to show that his possession was voluntary. For the following reasons, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4      Defendant was tried on four counts of child pornography for possessing digital images of a child he knew or reasonably should have known was under the age of 13 who was engaged in an act of a sexual nature, and one count of possessing a similar digital image of a child who was between the ages of 13 and 18 years old.

¶ 5      At trial, Plainfield police detective Dino Dabezic testified that he worked in a specialized unit named Internet Crimes Against Children. On June 3, 2013, Dabezic began an investigation involving solicitation of a minor child. Naperville police detective Richard Wistocki assisted Dabezic with the investigation. At about 11 a.m. on June 10, 2013, Dabezic and several Plainfield and Naperville police officers went to a Dunkin' Donuts in Plainfield to meet with someone whom they expected to solicit a minor. Defendant entered the Dunkin' Donuts, met with an undercover officer, and gave the officer an envelope containing cash. Defendant then exited the Dunkin' Donuts and walked towards a "fictitious" van in the parking lot. Defendant was taken into custody and transported to the Plainfield police department.

¶ 6      Approximately six hours after defendant's arrest, police obtained and executed a warrant to search his home.  Defendant's wife answered the door when the police arrived. Plainfield police detective Amanda Felgenhauer and other officers were directed to the second floor of the single-family home. One of the rooms appeared to be an "office-type" work area that contained a large amount of computer equipment including multiple towers. There was one "main computer" that

was already powered on before the police entered the room, which Detective Wistocki searched for child pornography. Wistocki did not need a password to access the computer.

¶ 7 Felgenhauer took numerous photographs to document Wistocki's activity on the computer. In court, Felgenhauer and Witsocki identified 18 photographs depicting files and images displayed on the computer monitor during the computer search. The first photograph showed the search bar on the computer monitor where Wistocki had entered the letters "pthc." Wistocki explained that the search term is commonly used by people who download child pornography and stands for "Pre Teen Hard Core." When Wistocki entered the search term on defendant's computer, numerous files appeared. Wistocki identified four photographs Felgenhauer took of the computer monitor that depicted the file tree, which was the list of file folders that contained files with the term "pthc" in them. Wistocki testified that the files were located on "any system that's connected to the tower." Wistocki noted that there were three separate files named "very young French slave girl."

¶ 8 Wistocki testified that photographs 6 through 18 showed hundreds of "thumbnail" images of child pornography which he recognized as a series of photos that had been shared among child pornographers around the world. Wistocki explained that thumbnail images show which photos are contained in a particular file folder, and if a person clicks on a thumbnail image, a larger photo of that image appears. Wistocki identified the State's exhibits 20 through 30 as enlarged photographs from some of the thumbnail images depicting child pornography. After Wistocki's initial search of the computer in the home, Felgenhauer took custody of the computer and brought it to the Plainfield police department where she inventoried it. On cross-examination, Felgenhauer acknowledged that she did not know if anyone had been in the computer room in defendant's home in the six hours between Bocock's arrest and the execution of the warrant. Felgenhauer identified

a photograph of a white computer tower as one of the towers connected to the main computer Wistocki accessed. She also identified three photographs she took depicting cords for multiple devices plugged into a computer tower. The white computer tower and a hard drive were connected to the main computer along with other items such as a mouse and keyboard. However, from the photographs alone, Felgenhauer could not identify to which devices the cords were connected. Felgenhauer acknowledged that she did not collect any fingerprints or DNA from the computer equipment.

¶ 9    Wistocki explained that he initially tapped the space bar to see if the computer was on so that he would not affect the computer's registry. The registry captures the time and date of a keystroke. Thus, when a person types on the keyboard, it is saved in the computer's registry. The registry will also show the last time a file was opened. Wistocki did not have the expertise to do a forensic examination of the computer himself, and no forensic investigators were available to come to the home and assist him at the time of the search.

¶ 10    Wistocki recalled that one of the black towers was connected to the system. He did not know if the hard drive server was connected, or if there were any external attachments. Wistocki did not check to see which cords were connected to the monitor, but Felgenhauer photographed the connections. Wistocki was unable to tell which pieces of equipment were connected by looking at the photographs. All the photographs introduced in court were taken by Felgenhauer as she observed Wistocki searching the computer at defendant's home. The Regional Computer Forensic Lab subsequently conducted a forensic examination of the computer and found the same images as Wistocki.

¶ 11    Wistocki acknowledged that he did not have the metadata for the photographs introduced in court and could not determine the metadata by looking at the photos. He explained that the metadata would show when an image was downloaded, uploaded, traded, or the date and time a photograph was taken. He did not know which of the devices the photos came from. Wistocki denied that the lack of metadata meant that there was no way to tell whether anyone saw the images. Wistocki explained that the photos shown in court were "downloaded into a file structure" and categorized. Thus, the photos had been downloaded to the computer. The forensic report, which was not prepared by Wistocki, would indicate whether anyone opened the thumbnail images before he did.

¶ 12    The trier of fact found that the evidence sufficiently established that defendant had constructive possession of the images that were found at the address where he resided. Consequently, the circuit court found defendant guilty of four counts of child pornography for possessing digital images of a child he knew or reasonably should have known was under the age of 13. The circuit court found defendant not guilty of the one count of possessing a digital image of a child between the ages of 13 and 18 years old. The circuit court merged the four counts of child pornography into one count and sentenced defendant to a term of seven years' imprisonment. This timely appeal followed. Ill. S. Ct. R. 606(b) (eff. Mar. 12, 2021).

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to directly or exclusively connect him to the computer that contained the digital images and failed to show that any possession was voluntary. Defendant asserts that there was no evidence regarding when or how the files came to be on the computer, nor any evidence

that the files were previously opened or viewed. He further argues that there was no evidence that he ever accessed illegal child pornography websites or that he, or anyone else, voluntarily or knowingly procured or received the files. Defendant points out that his wife was in the house and had access to the computer. Defendant claims the State failed to eliminate the possibility that the images viewed by the police were accessed from a cloud or external computer located outside the home and were never accessed, viewed, or stored by defendant.

¶ 15    The State responds that the evidence sufficiently established that defendant had constructive possession of the images found on the main computer in his home which was under his control; thus, his knowledge of the images can be inferred. The State further asserts that defendant's act of solicitation of a minor is further evidence from which the fact finder could infer that his possession of child pornography was knowing and voluntary rather than inadvertent. The State points out that exclusive control includes joint possession, and that the presence of others in the home does not negate defendant's constructive possession. The State argues that Wistocki testified that the numerous descriptive file names in the computer's file structure indicated that the images were stored locally, and defendant's suggestion that someone else used the computer and committed the offense is mere speculation.

¶ 16    When a defendant claims the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility

and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). This court will not retry the defendant. *People v. Jones*, 2023 IL 127810, ¶ 28. On review, we must draw all reasonable inferences from the evidence in favor of the State. *Id.*

¶ 17    In a bench trial, the trial judge is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In weighing the evidence, the fact finder is not required to disregard the inferences that naturally flow from that evidence, nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Jackson*, 232 Ill. 2d at 281. We will not reverse a criminal conviction based upon insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to the defendant's guilt. *Jones*, 2023 IL 127810, ¶ 28.

¶ 18    To prove defendant guilty of possession of child pornography in this case, the State had to establish that, with knowledge of the nature or content thereof, defendant possessed digital images of a child whom he knew or reasonably should have known to be under the age of 13, where the child was engaged in an act of a sexual nature. 720 ILCS 5/11-20.3(a)(6), (c-5) (West Supp. 2013). A child pornography charge does not apply to a person who does not voluntarily possess the image in which such material is depicted. 720 ILCS 5/11-20.1(b)(5) (West Supp. 2013). "Possession is voluntary if the defendant knowingly procures or receives a film, videotape, or visual reproduction or depiction for a sufficient time to be able to terminate his or her possession." *Id.*

¶ 19    Defendant does not dispute that the photographs of the computer images entered into evidence in this case contained child pornography. He argues, however, that the State failed to prove that he knowingly and voluntarily procured, received, or possessed the images.

¶ 20    Possession of child pornography may be either actual or constructive. *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 46. Constructive possession has been addressed extensively in narcotics cases, and courts have found those cases helpful when considering possession of electronic images in child pornography cases. *Id.* Constructive possession exists where the defendant "has the intent and capability to maintain control" over the illicit material. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27 (constructive possession of narcotics). Possession may be proven with evidence that the defendant had knowledge of the presence of the illicit material and immediate and exclusive control over the location where it was found. *Id.*

¶ 21    A defendant's knowledge is usually established by circumstantial evidence. *Jaynes*, 2014 IL App (5th) 120048, ¶ 46. In child pornography cases, to prove a defendant's knowledge, the State must show "that the images did not appear on the screen by accident but, rather, were sought out by the defendant because of their content." *People v. Gumila*, 2012 IL App (2d) 110761, ¶ 48. Knowledge may be demonstrated by evidence of the defendant's acts, declarations, or conduct, as well as the surrounding circumstances, from which it can be inferred that he knew the contraband existed in the place where it was found. *Jaynes*, 2014 IL App (5th) 120048, ¶ 46.

¶ 22    Proof that the defendant had control over the premises where the contraband was found gives rise to an inference that he knew it was there, absent other factors that might create a reasonable doubt of his guilt. *Id.* The fact finder may infer that the defendant had control over the premises where he lived. *Id.* "The law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband." (Internal quotation marks omitted.) *People v. Givens*, 237 Ill. 2d 311, 338 (2010).

¶ 23    Here, viewed in the light most favorable to the State, the record shows that the evidence was sufficient for the trier of fact to find that defendant had voluntary, constructive possession of the child pornography images found on the computer inside his home. Dabezic testified that he and Wistocki spoke with defendant at the police station and learned where defendant lived. Six hours later, the police executed a search warrant at defendant's residence. Defendant's wife answered the door and directed the police to a room on the second floor that appeared to be an "office-type" work area that contained a large amount of computer equipment. There was one "main computer" in the room that was already powered on when the police arrived. Wistocki pressed the space bar on the computer keyboard and discovered that "everything was on and open." Wistocki then clicked on the computer's file explorer, entered "pthc" in the search bar, and numerous files appeared containing child pornography. Because the illicit material was found on a computer in the defendant's home, the trier of fact could infer that defendant had control over the premises and, thus, knew the material was there. *Jaynes*, 2014 IL App (5th) 120048, ¶ 46.

¶ 24    In addition, the photographs documenting Wistocki's search on the computer demonstrated that defendant's possession of the images was not accidental. Wistocki testified that "pthc" is a term commonly used by people who download child pornography that stands for "Pre Teen Hard Core." When Wistocki entered the term on defendant's computer, numerous files appeared. Wistocki noted that there were three separate files named "very young French slave girl." The photographs show that Wistocki clicked on a file named "VERY YOUNG French slavegirl (1 of 3)" which brought up hundreds of thumbnail images of child pornography. Another photograph depicted multiple file folders across the top of the computer screen that displayed images of child

pornography. Wistocki testified that the photos shown in court were "downloaded into a file structure" and categorized and, thus, had been downloaded to the computer.

¶ 25    The record further shows that the trier of fact could infer defendant's knowledge from his conduct and the surrounding circumstances in this case. Dabezic and Wistocki testified that the charges against defendant resulted from their investigation regarding solicitation of a minor child. The officers went to a Dunkin' Donuts to meet with someone whom they expected to solicit for a minor. Defendant entered the store, met with an undercover officer, gave the officer an envelope containing cash, then walked towards a "fictitious" van in the parking lot. Based on defendant's conduct of attempting to solicit a minor, the trier of fact could infer that he knowingly and voluntarily possessed the child pornography and that he sought out that content rather than it accidentally appearing on the computer in his home. *Gumila*, 2012 IL App (2d) 110761, ¶ 48. Thus, the trier of fact could infer that defendant knowingly procured the images and that his possession was voluntary. 720 ILCS 5/11-20.1(b)(5).

¶ 26    The defendant's assertions that his wife had access to the computer and that the images were possibly accessed from a cloud or external computer are unpersuasive. A trier of fact's conclusion that defendant constructively possessed the illicit material is not diminished by the fact that his wife could have had access to it. *Givens*, 237 Ill. 2d at 338. When a defendant argues "that someone else committed the crime, the trier of fact may reject the argument if it is mere surmise or possibility." *Jaynes*, 2014 IL App (5th) 120048, ¶ 48. Moreover, the trier of fact was not required to disregard the inferences that naturally flowed from the evidence, nor did it have to consider any possible explanation consistent with defendant's innocence and raise it to the level of reasonable doubt. *Jackson*, 232 Ill. 2d at 281.

¶ 27                                    III. CONCLUSION

¶ 28     We therefore conclude that the evidence at trial was sufficient to prove beyond a reasonable

doubt that defendant knowingly and voluntarily had constructive possession of child pornography.

¶ 29     For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30     Affirmed.