2021 IL App (1st) 190497-U

No. 1-19-0497

Order filed September 8, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 18 CR 4374 |
| BRANDON WESTBROOK-SIMMONS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thaddeus L. Wilson, |
| | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Conviction for aggravated battery of peace officer affirmed. Evidence was sufficient to show defendant knew victim was private security guard.

¶ 2    Following a bench trial, defendant Brandon Westbrook-Simmons (also known as Brandon Simmons) was convicted of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2018)) and sentenced to eight years' imprisonment. On appeal, he claims the evidence was

insufficient to prove beyond a reasonable doubt that he knew the victim was a private security guard. For the following reasons, we affirm.

¶ 3    Defendant was charged with 15 weapons and aggravated battery offenses stemming from an incident that took place on March 6, 2018, where private security guards at a housing complex detained defendant after receiving a complaint, and defendant resisted and was found to have a firearm and ammunition on his person. He went to trial on 10 counts. Relevant here, the trial court ultimately found defendant guilty on three counts of aggravated battery, merged two of the counts into the third, and then sentenced defendant on aggravated battery count XIII. Aggravated battery count XIII alleged that defendant, in committing a battery, knowingly caused bodily harm to Officer Robert Haynes when he struck Haynes about the groin with his knee, and defendant knew Haynes to be a private security officer for "Protec Security" while Haynes was performing his official duties.

¶ 4    At trial, Officer Haynes testified he was a police officer for the Leland Police Department and Rockford Park District Police. On March 6, 2018, Haynes was employed by Pro Tech Security Group as a security supervisor for the Parkway Gardens housing complex. He was working with two officers, Ben Comas and Tom Kaniewski. Shortly after 3:30 p.m., he received a call and responded to "the 6300 area" in the complex regarding a man who was "causing issues." At the location, Haynes observed a man matching the description given on the call. Haynes identified defendant as that person in court. He recognized defendant at the scene because they had prior contact before March 6, 2018.

¶ 5    Haynes walked with Comas to the location and observed defendant walking towards a gate. Comas ran up and detained defendant and informed him that he was being detained for

investigation purposes. Haynes caught up shortly thereafter, and Kaniewski drove up in a security vehicle a few seconds later and then approached them on foot. Defendant was handcuffed and lying on his stomach. Kaniewski conducted a pat down search of defendant, and then the officers picked defendant up to walk him to the security vehicle to conduct a more thorough search and detain him until the Chicago Police Department (CPD) arrived. Haynes recovered a loaded black magazine from defendant. He placed defendant in the back seat of the vehicle and then recovered a black semi-automatic Highpoint 9-millimeter gun from inside defendant's pants.

¶ 6    Defendant thereafter "became very upset" and attempted to push through to the front seat to escape through the front of the car. Defendant attempted to bite Haynes and then lunged forward and bit Kaniewski's left hand. Haynes placed his taser on defendant's chest and informed him that if he did not stop fighting, Haynes would tase him. Defendant nevertheless attempted to bite Haynes again, so Haynes tased him. Defendant then complied, and the officers shut the vehicle door.

¶ 7    Once CPD arrived, Haynes removed defendant from the security vehicle, and defendant tried to lunge at Haynes and bite him in the face. When Haynes moved back, defendant kneed him in the groin. In response, Haynes tased defendant in the back right shoulder, but then Haynes could not stand any longer. Haynes attempted to catch his breath in the back of the security vehicle while Comas, Kaniewski, and CPD officers fought with defendant on the ground. After defendant kneed him in the groin, Haynes felt "a very sharp, hard groin pain and loss of breath a little bit." CPD officers then took defendant away.

¶ 8    Haynes identified photographs of himself that were taken by the evidence technician depicting how he appeared on the day of the incident. He stated the photographs showed the

security uniform he wore while working at Parkway Gardens: a black polo, navy blue "BU's," and a navy blue ballistic vest. The vest had his name on it, "Parkway Gardens," and read "police" on the front in the top left corner. The back read "police" also. Haynes had a radio and some medical equipment in his pockets. Because it was cold, he also wore a jacket "like Officer Kaniewski had," which read "Security Co." along the sleeves. He later testified the coat read "security" on the back. Haynes also identified photographs taken of Kaniewski, which showed his jacket displaying "security" on the back. Our review of the photos corresponds with Haynes' description, though he is not depicted wearing a jacket in the photos.

¶ 9    Haynes testified that Parkway Gardens had a closed-circuit security system, which was working properly on March 6, 2018, and recorded the incident. The camera was mounted approximately 50 feet in the air on one of the buildings and "maybe 50 to 100 feet" from the vehicle and where the incident took place. The State published the video for the court, while Haynes narrated the footage. Haynes' description matched his testimony regarding the incident. He added that the security officers initially stopped defendant because CPD informed them that defendant had an active warrant and had been barred from Parkway Gardens. Haynes had personal knowledge of defendant's ban.

¶ 10    Our review of the video shows, in relevant part, a marked CPD vehicle arrives inside the complex. Two officers exit and approach the security vehicle, where the security officers are standing. As the security officers remove defendant from the vehicle, there is a struggle with all the security officers and police officers attempting to restrain defendant, who resists. Following the struggle, Haynes sits in the back seat of the security vehicle while Kaniewski sits on defendant, who is on the ground.

¶ 11    On cross-examination, Haynes testified that he prepared a "police report" on March 8, 2018, as part of his job as security for Parkway Gardens, stating he was kneed in the groin. Haynes tased defendant after defendant kneed him, because defendant was resisting. Haynes did not go to the hospital or receive medical treatment as a result of being kneed in the groin. He also did not lose time from work.

¶ 12    On redirect, Haynes testified that he had scratches on his arms but did not include them in the report because he was unsure how he got them. Defendant's demeanor as Haynes pulled him out of the security vehicle was aggressive and hostile.

¶ 13    Benjamin Comas testified he was in the military and, on the date in question, was working as a security officer at Parkway Gardens with Haynes and Kaniewski. His testimony was substantially similar to Haynes' testimony of the incident. He identified defendant in court as the person he ran up to after being informed someone was attempting to break into an apartment. Comas added that, when he first ran up to defendant and grabbed his shoulder, defendant asked, "What are you doing, officer?" Comas testified that defendant "obviously recognized [him] right away." Comas told defendant that he was being detained. Haynes helped him handcuff defendant, then Kaniewski drove up in the security vehicle. Once defendant was in the security vehicle, Comas observed Haynes retrieve a magazine and handgun from his pants. Comas subsequently saw defendant's mouth "going for" Haynes's forearm, so he grabbed defendant's feet because he had been kicking.

¶ 14    Eventually two CPD officers arrived on the scene. At that time, defendant was still in the backseat of the security vehicle and Haynes told the officers, "[T]his is your case now. The offender is yours." Defendant then "acted up again" and kicked Haynes in the groin. Following

the kick, Kaniewski put defendant on the ground and Comas stood by Haynes to ensure he was okay. He remembered Haynes was in pain and sitting in the back of the security car.

¶ 15    On cross-examination, Comas testified that Haynes said someone bit him. There were five officers total when defendant was being removed from the white Pro Tech security vehicle to be handed over to CPD officers.

¶ 16    Chicago police officer Vanessa De La Huerta testified she and her partner Danielle Cusimano responded to the scene, in uniform, in a marked vehicle. There were three security officers at the scene "standing by their Pro Tech security vehicle with the offender inside." Haynes had the offender, whom De La Huerta identified in court as defendant, step out of the security vehicle. Once outside, defendant lunged at Haynes and attempted to bite his face. There was a struggle and Haynes tased the defendant. De La Huerta did not see anything happen between when defendant lunged at Haynes and when Haynes tased defendant because "there was so much going on at that time." However, she observed Haynes breathing heavily and "kind of kneeled down as if he were in pain." Haynes subsequently gave De La Huerta a handgun and magazine, which she secured.

¶ 17    De La Huerta's body camera was recording when she arrived on the scene, and the video was published for the court. The body camera footage shows De La Huerta exiting her vehicle and approaching a white security vehicle, which reads "Pro Tech Security." (The exhibit containing this footage that was provided to this Court does not have audio, only video.)

¶ 18    In the footage, De Le Huerta approaches the driver's side where Haynes is next to the open back door. Haynes' vest reads "police" and Kaniewski, who is nearby, has a jacket which reads "security" on the back and "security officer" on the sleeve. As Haynes removes defendant from

the security vehicle, a struggle ensues, and the body camera is partially obscured while the officers and security guards attempt to restrain defendant. At some point, Haynes tases defendant, who falls to the ground. Once he is on the ground, Kaniewski gets on top of defendant. Haynes is shown sitting in the back seat of the security vehicle. Haynes emerges from the vehicle and winces. Comas and Haynes retrieve the firearm and magazine from the front of the security vehicle and Haynes hands them to De La Huerta and gestures toward his groin.

¶ 19    On cross-examination, De La Huerta testified she did not see defendant knee Haynes. Haynes did not cry out that he had been kneed in the groin, but he sat back in the security vehicle and was breathing heavily. She clarified that she observed a struggle but did not see what every person was doing during the struggle and did not have a clear view of defendant's knee.

¶ 20    The trial court granted a directed finding on counts II and III (armed violence).

¶ 21    After closing arguments, the court found defendant guilty of one count of armed habitual criminal (AHC), two counts of unlawful use of a weapon by a felon (UUWF), and three counts of aggravated battery to a peace officer, Robert Haynes. The aggravated battery counts were premised on defendant striking Haynes in the groin with his knee, knowing Haynes was a private security officer for Pro Tech Security, while Haynes was performing his official duties (count XIII), to prevent Haynes from performing his official duties (count XIV), and in retaliation for Haynes performing his official duties (count XV).

¶ 22    In relevant part, the court found the private security guards were "dressed in uniform, visibly identifying themselves as security officers" and that "[u]nder the law, private security guards are specifically delineated as coming under the definition of a peace officer." The court found defendant knowingly and intentionally kneed Haynes in the groin "battering him and

- 7 -

knowing him to be a security officer performing his official duties in attempting to prevent him from doing and performing his official duties." It found defendant not guilty of two counts of aggravated battery to Kaniewski.

¶ 23    Defendant filed a post-trial motion challenging the findings of guilt on the AHC and UUWF charges, alleging in pertinent part that the State failed to prove aggravated battery to Haynes because the evidence did not show he knew that Haynes was a private security officer. The court granted the motion with respect to the weapons counts, acquitting defendant of the armed habitual criminal and UUWF counts. However, the court denied defendant's motion with respect to his claim regarding the three aggravated battery counts charging battery to Haynes.

¶ 24    In ruling on the motion, the court stated it reviewed the trial transcripts, the exhibit photographs, and the security video. The court also noted the officers testified they had prior contact with defendant. However, the court concluded that, even *without* the prior contact, the evidence showed as follows:

> "[T]here's a security vehicle that says Security. Defendant is taken to that vehicle. It was clear it's a security vehicle. They have Security on their jacket, though it's on the back of the jacket. But given the length of time and manner of contact that he had with them prior to the battery that's alleged, he knew they were security. And if he didn't, then he must have thought they were the police because Police was on the front of the vest visible and under the law it would not make a difference whether it was proven police or proven security.
>
> The statute in the law is still—and the count is still the same."

¶ 25    The court merged aggravated battery counts XIV and XV into aggravated battery count XIII, which was premised on defendant striking Haynes in the groin with his knee, knowing Haynes was a private security officer while Haynes was performing his official duties. The court sentenced defendant to eight years' imprisonment on that count.

¶ 26    On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he knew Haynes was a private security guard. He asks that we reduce his conviction to battery and remand for resentencing.

¶ 27    The State must prove each element of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). When a defendant challenges the sufficiency of the evidence, we ask " 'whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Ramos*, 2020 IL App (1st) 170929, ¶ 57 (quoting *People v. Ward*, 215 Ill. 2d 317, 322 (2005)).

¶ 28    As a reviewing court, we do not retry the defendant; instead, it is the trier of fact's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Gray*, 2017 IL 120958, ¶ 35. We thus defer to the findings of the trier of fact "on questions involving the weight of the evidence or the credibility of the witnesses." *Id.* We will only reverse a criminal conviction if "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 29    Defendant was convicted of aggravated battery to a private security officer. As charged here, a person commits the offense of aggravated battery when, in committing a battery other than by discharge of a firearm, he knows the individual battered to be a private security officer

performing his official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2018). A person commits battery if he knowingly without legal justification by any means causes bodily harm to an individual. 720 ILCS 5/12-3(a)(1) (West 2018).

¶ 30    Defendant does not dispute that the evidence was sufficient to convict him of battery or that Haynes was performing his official duties at the time of the battery. Rather, he solely argues the evidence does not support a finding of aggravated battery because the evidence failed to show that he knew Haynes was working as a private security officer, rather than as a police officer, at the time of the offense. Thus, we limit our review to that issue.

¶ 31    "An admission by a defendant is not required for the trier of fact to conclude that a defendant had knowledge of something." *People v. Jasoni,* 2012 IL App (2d) 110217, ¶ 20. Such evidence "may be established by evidence of the acts, statements, or conduct of the defendant, as well as the surrounding circumstances." *People v. Jaynes,* 2014 IL App (5th) 120048, ¶ 46. The evidence must sufficiently support an inference of knowledge based on established facts rather than pyramided on intervening inferences. *People v. Lissade,* 403 Ill. App. 3d 609, 613 (2010).

¶ 32    Here, viewing the evidence in the light most favorable to the State, as we must, we conclude the evidence was sufficient to show defendant knew Haynes was a private security officer when he struck Haynes in the groin. Haynes was with two other security guards who responded to the call. Defendant was detained and searched first by Comas, then by Haynes. Haynes placed defendant in a vehicle clearly marked "security." Haynes was wearing a vest that read "police" and "Parkway Gardens" on the chest, and Kaniewski was wearing a jacket that read "Security." Moreover, Haynes testified he had previous experience with defendant, and defendant had previously been banned from the premises, which supports an inference that defendant knew there

was security for the housing complex. To that we would add that, at the time that defendant kneed Haynes in the groin, an actual police vehicle had arrived on the scene, highlighting a clear contrast with the security vehicle in which defendant had initially been placed.

¶ 33    In light of these circumstances, when three security officers, one wearing a "security" jacket and Haynes wearing a vest reading "Parkway Gardens," detained defendant, patted him down, and escorted him to a vehicle marked "security," and were attempting to transfer him to uniformed CPD officers in a marked police vehicle when defendant kneed Haynes, and further in light of defendant's previous encounters with this security team, we find it was reasonable for the trial court to infer that defendant knew Haynes was a security officer when he kneed him in the groin. See *Gray*, 2017 IL 120958, ¶ 35 (it is the trier of fact's responsibility to draw reasonable inferences from the evidence); *Jaynes,* 2014 IL App (5th) 120048, ¶ 46 (knowledge may be established by evidence of the surrounding circumstances). Accordingly, we cannot say "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Gray*, 2017 IL 120958, ¶ 35.

¶ 34    In reaching this conclusion, we are unpersuaded by defendant's claim that the evidence was insufficient because the trial court made a factual finding that it did not matter whether defendant believed Haynes was a police officer or a private security officer. The trial court, in ruling on defendant's posttrial motion, found the evidence was sufficient to prove defendant knew Haynes was a security officer and that, if he did not know, he "must have" thought Haynes was a police officer, which would be treated the same under the aggravated battery statute. We do not find that the trial court's statement changes the sufficiency of the evidence against defendant. We may affirm on any basis in the record regardless of the circuit court's reasoning (*People v.*

*Williams*, 193 Ill. 2d 306, 349 (2000)), and the evidence here amply supports a finding that defendant knew, as charged, that Haynes was a private security officer when he kneed him.

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.