NOTICE
Decision filed 08/22/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220785-U

NO. 5-22-0785

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Lawrence County. |
| | ) | |
| v. | ) | No. 20-CF-74 |
| | ) | |
| ROBERT S. BLEDSOE, | ) | Honorable |
| | ) | Robert M. Hopkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Insufficient evidence exists to prove defendant guilty beyond a reasonable doubt of child pornography based on knowing possession of computer depictions where the record contains no evidence that defendant deliberately searched for those images, knew the images were saved in his cell phone's cache files, had any ability to access or control the cache files, or retained the depictions long enough to terminate possession.

¶ 2    Defendant, Robert S. Bledsoe, appeals his convictions on two counts of child pornography in violation of section 11-20.1(a)(6) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-20.1(a)(6) (West 2018)) contending, *inter alia*, the evidence was insufficient to prove him guilty beyond a reasonable doubt. The State filed a confession of error setting forth the elements of the charges and stating the conviction must be overturned due to insufficient evidence. We accept the

1

State's concession and therefore reverse defendant's conviction without considering defendant's remaining arguments.

¶ 3                              I. BACKGROUND

¶ 4      In September 2020, Detective Bobby Wallace was assigned to investigate defendant based on an anonymous tip to the National Center for Missing and Exploited Children's "cybertip line" regarding possible child pornography on various computer devices in defendant's possession. Wallace is a detective with the Jefferson County Sheriff's Department who also serves on the Illinois Attorney General's Internet Crimes Against Children Task Force and on a federal task force related to such crimes.

¶ 5      On September 23, 2020, Wallace conducted a recorded interview with defendant outside defendant's home. During that interview, defendant gave Wallace permission to process his cell phone. Wallace subsequently analyzed the data extracted from defendant's phone. That analysis revealed numerous thumbnail images of child pornography stored in the phone's cache files but did not reveal any specific searches or viewing history and did not reveal any saved images. As a result of the analysis, Wallace arrested defendant on September 29, 2020, and obtained a second recorded interview with defendant, while he was in custody.

¶ 6      On October 1, 2020, the State charged defendant, by information, with 10 counts of child pornography in violation of section 11-20.1(a)(6) of the Code (*id.*). Each charge alleged defendant knowingly possessed photographs of children he knew to be under the age of 13 engaged in acts of sexual penetration.

2

¶ 7    A preliminary hearing was held on December 30, 2020. On direct examination, Wallace testified that he conducted a search of the defendant's cell phone using a device called a Cellebrite.[1] He explained that the Cellebrite device "clones" data from the phone—that is, it downloads data and makes copies. Wallace testified that he subsequently analyzed the data cloned from defendant's phone using software on his office computer which takes the raw data from the phone and puts it into formats investigators can read "such as images, videos, texts, [things] of that nature." Wallace further testified that these processes revealed several thousand images of children exposing their genitals or engaging in sexual activity.

¶ 8    Asked about his interviews with defendant, Wallace stated that defendant admitted to knowingly viewing pornography. He told Wallace that he searched the internet for adult pornography and explained that when doing so, he "would, for lack of better words, follow the pop-up ads" to videos and images of child pornography. Wallace testified that he did not find defendant's explanation credible because child pornography is difficult to find online.

¶ 9    On cross-examination Wallace testified that the images were found in the phone's cache files. He explained that a cache file is created by a device automatically when the user views an image. The images in a cache file were copies of the images viewed by the user. The user does not have to take any action to create these copies and put them in the cache file. Wallace acknowledged that he did not specifically ask defendant whether he had viewed any of the 10 images at issue in the charges against him. Wallace testified that defendant indicated he knew nothing about images being stored in cache files.

---

[1]The State submitted the transcript from Wallace's preliminary hearing testimony at defendant's trial as Exhibit 4. The parties stipulated to the admission of the transcript except for portions the parties agreed should be redacted and left the admissibility of testimony on page 12 for the court's resolution.

¶ 10    Wallace was next asked whether the extraction report generated by the software indicated *when* any of the 10 individual images at issue were viewed. Wallace initially testified that this was "hit and miss." He explained that the report indicated when some, but not all, of the images were last modified. The "last modified" date could mean the image was viewed, deleted, or modified in some other way on that date. Wallace stated there was no way to know which of these things occurred. Finally, Wallace testified that although the data in the report showed that the images stored in the cache file were not taken by the phone's camera, it did not indicate whether the images came to be in the cache file because they were viewed online or because they were transferred to defendant's phone from another device.

¶ 11    On February 9, 2022, the parties presented an agreement to the court. Pursuant to their agreement, defendant waived his right to a jury and agreed to a stipulated bench trial on amended versions of counts I and II of the information. The State dismissed the remaining eight charges and amended counts I and II by interlineation to allege that defendant knowingly possessed "depictions by computer" of child pornography rather than "photographs." In describing the agreement to the court, the prosecutor noted that this amendment was consistent with Wallace's testimony at the preliminary hearing.

¶ 12    The matter proceeded to a stipulated bench trial on August 3, 2022. The stipulation included an agreement that five State exhibits were admissible and an agreement as to which two witnesses would testify if they were called at trial—Wallace and John McGuire, a former law enforcement officer with experience in data extraction who analyzed the evidence in this case on behalf of defendant.

¶ 13    As its case in chief, the State presented the stipulation and its five exhibits, consisting of (1) Wallace's curriculum vitae listing his qualifications to process digital devices and analyze the

4

data extracted from them, (2) the transcript of Wallace's first interview with defendant, (3) the transcript of Wallace's second interview with defendant, (4) the transcript of Wallace's preliminary hearing testimony, and (5) copies of the two depictions at issue in the two remaining charges. Prior to trial, the parties agreed to redact numerous statements in the transcripts of the second interview and the preliminary hearing. However, they disagreed concerning the admissibility of statements made by Wallace concerning the large number of images of child pornography that he found in the cache files of defendant's cell phone. The parties highlighted the disputed statements and asked the court to rule on their admissibility.

¶ 14    The transcript of the first interview revealed that when asked if he had "any kind of child pornography" on "any kind of devices," the defendant replied, "No." When subsequently asked if he had any child pornography on his cell phone, the defendant again said, "No." The transcript further revealed that defendant gave Wallace permission to search the phone and signed a consent to search form.

¶ 15    Wallace began his second interview with defendant by explaining that the interview was related to the search of his phone defendant allowed Wallace to conduct. Wallace said, "So I finished that. I did find some stuff on the phone. Um, I don't know if you're familiar how, you know what I'm talking about when I say a thumbnail or a cache file?" Defendant responded, "Not really." Wallace explained that a device like defendant's phone saved thumbnails or cached pictures of images the user views on the internet in something called a cache file for the user's convenience. He noted that this occurred even if the user did not download anything. He stated, "You may not have ever downloaded it, but I know you've been looking at it because [of] the cache's [*sic*] on your phone."

5

¶ 16 Next, Wallace stated, "So now we just need to kind of walk through where *** we [are] getting files and stuff from." In response, defendant indicated the images came from the internet. When asked to identify specific websites he had visited, defendant replied, "Well, I'd go on adult sites and, you know, you get them pop-ups." He also stated that "then sometimes you go to clear off there and there'll be shit on there you didn't even know had popped up." Wallace told defendant the device only created a cache file if the user clicked on an image. He also noted that 80% of the pornographic images found on defendant's phone were images of children and that he found "at least 2,000 files."

¶ 17 When asked again to identify specific websites he visited, defendant stated he did not know the names of any specific sites. He estimated that he looked at pornography "maybe four or five times" per year and that he spent "a couple [of] hours" during each session. Wallace asked, "And then how many files and stuff do you, would you estimate you look at in those couple [of] hours?" In response, defendant asked, "Now what do you mean by files?" Wallace explained that he meant any time defendant clicked on a picture or video. Defendant then answered, "I don't know. I have a habit of just clicking through the web pages." He did not know how many websites he visited in an average session. When asked the last time he had looked at internet pornography, defendant estimated two or three weeks earlier.

¶ 18 Defendant acknowledged that he was the only person who used his phone. Wallace admitted during his preliminary hearing testimony he did not ask defendant whether or when he had viewed any of the images at issue in the charges against him.

¶ 19 The stipulation indicated that, if called as a witness at trial, Wallace would testify that he conducted the two interviews with defendant on September 23, 2020, and September 29, 2020, and that he testified during the preliminary hearing on the charges. In addition, he would testify at

trial that the depictions by computer at issue in amended counts I and II of the information each depicted a child defendant knew or reasonably should have known was under the age of 13 engaging in an act of sexual penetration. Specifically, each depicted a child's mouth on the genitals of another person.

¶ 20  The parties also stipulated that if called at trial, John McGuire would testify that he was the executive manager of a technology company and a former law enforcement officer who processed over 114 electronic devices in the course of his work. On behalf of defendant, McGuire examined a DVD of the data extracted from defendant's cell phone, investigation protocols provided by Wallace, and the Cellebrite extraction report Wallace provided. He would testify that he was familiar with the Android operating system used by defendant's cell phone.

¶ 21  McGuire would also testify that he agreed with Wallace's conclusion that the extraction report did not indicate how the depictions of child pornography at issue in the charges arrived in defendant's cell phone. He would explain that data and artifacts such as cookies and search terms are saved and stored on the device. The Cellebrite extraction report in this case revealed that a user of defendant's phone had searched for pornography on the internet; however, the extracted data and artifacts did not include any search terms related to child pornography. According to McGuire, the report likewise did not reveal any data or artifacts indicating that the depictions at issue were sought by any user of the phone.

¶ 22  In addition, McGuire would testify that the temporary internet files and caches containing the depictions at issue were in restricted file locations which were not accessible to cell phone users absent "elevated permission." He found no indication that defendant or any user of the phone had the necessary elevated permission.

¶ 23 Finally, McGuire would testify that he agreed with Wallace that the extraction report did not indicate when, or for how long, the depictions at issue in counts I and II were viewed by any user of defendant's cell phone. He found nothing in the report to indicate the length of time any image appeared on the phone's screen or any indication that they were, in fact, viewed by a user of the phone. In addition, McGuire found nothing to indicate that defendant or any other user of his phone knew that the files were stored in the phone's cache files.

¶ 24 After the State presented the stipulation and its five exhibits to the court, it rested. Defendant moved for a directed finding. The court reserved ruling on the motion. Defendant offered into evidence defense exhibit A, which was admitted without objection. We note that the exhibit does not appear in the electronic record filed with this court. Defendant states in his brief that the exhibit provided McGuire's qualifications as an expert. After defendant rested, he renewed his motion for a directed finding. The court again reserved ruling.

¶ 25 On September 12, 2022, the court entered a detailed memorandum of decision. The court first ruled on the admissibility of the disputed statements in the transcripts of the second recorded interview and Wallace's preliminary hearing testimony. As noted above, these statements related to the large number of cached thumbnail images of child pornography found in the cache files of defendant's phone. Defendant argued the statements were impermissible evidence of other crimes. The court ruled, however, that the evidence was admissible to show that defendant intended to search for child pornography and did not come across it inadvertently. The court also found the probative value of the evidence outweighed its prejudicial effect.

¶ 26 The court next addressed the substance of the charges. The court found there was no dispute that defendant had knowledge of the nature and content of the images. The court emphasized that defendant was the only person who used his phone but went on to explain that to establish

8

possession of the cached images requires evidence that defendant exercised power or dominion over them. In analyzing this element, the court found that defendant gave contradictory statements regarding whether he knew the files were automatically downloaded in the phone's cache files. Although the court did not highlight any statements defendant made indicating awareness of the cache files, the court stated, "Defendant's apparent claim to naivete about the thumbnails is contradicted by the evidence of his history of extensive viewing of child pornography on the internet" and by the "relatively low ratio of adult pornography images to child pornography images in the cache files." Ultimately, the court concluded defendant knowingly possessed the two depictions in the cache files because the evidence showed they "did not come to be on his phone accidentally." The court therefore denied defendant's motions for a directed verdict and found him guilty of both counts of possession of child pornography.

¶ 27    On October 4, 2022, defendant filed a motion for entry of a judgment of acquittal. He argued that (1) the court erred in admitting the disputed statements in the second interview and the preliminary hearing testimony and (2) the evidence was insufficient to find him guilty of possession of the depictions beyond a reasonable doubt. The court denied the motion after a hearing on November 11, 2022. The court subsequently sentenced defendant to 30 months of probation. Defendant timely appealed.

¶ 28                                II. ANALYSIS

¶ 29    "Due process requires that to sustain a conviction of a criminal offense, the State must prove a defendant guilty beyond a reasonable doubt of the existence of every element of the offense." *People v. Lucas*, 231 Ill. 2d 169, 178 (2008) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). The issue for an appeal challenging the sufficiency of the evidence is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

9

have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson*, 443 U.S. at 319).

¶ 30    Here, defendant was charged with two counts of child pornography for knowing possession of depictions by computer of children engaged in sexual activity under section 11-20.1(a)(6) of the Code (720 ILCS 5/11-20.1(a)(6) (West 2018)). A person commits the offense if "with knowledge of the nature or content thereof" that person "possesses any *** depiction by computer of any child *** whom the person knows or reasonably should know to be under the age of 18 *** engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection" (*id.*), including engaging in any act of sexual penetration or conduct, including oral sex (*id.* § 11-20.1(a)(1)(i), (ii)). The statute further provides that possession must be voluntary. *Id.* § 11-20.1(b)(5). Voluntary possession occurs when a person "knowingly procures or receives a *** depiction [of child pornography] for a sufficient time to be able to terminate his or her possession." *Id.*

¶ 31    The depictions at issue in this case involved children engaged in oral sex. Thus, knowing and voluntary possession of the depictions falls within the statute. In addition, there is sufficient evidence to support the court's finding that defendant had knowledge of their content. The question is whether there is sufficient evidence to prove that defendant had *possession* of the depictions at issue and, if so, whether that possession was *voluntary*.

¶ 32    The element of possession can be established by proof of either actual or constructive possession. *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 46. Possession entails " 'having or holding property in one's power; the exercise of dominion over property.' " *People v. Gumila*, 2012 IL App (2d) 110761, ¶ 39 (quoting Black's Law Dictionary 1201 (8th ed. 2004)). Actual possession therefore exists if defendant exhibits some form of dominion or control over the illicit

10

material. *Jaynes*, 2014 IL App (5th) 120048, ¶ 46. "Actual possession 'does not require personal touching of illicit material but, rather, present personal dominion over it.' " *Gumila*, 2012 IL App (2d) 110761, ¶ 41 (quoting *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000)). Constructive possession exists where, although defendant does not presently exercise actual personal dominion over the illicit material, he or she has the intent and capability to do so. *Id.*

¶ 33    Pursuant to statute, a defendant's possession of child pornography must be both knowing and voluntary. *Id.* ¶ 48 (citing 720 ILCS 5/11-20.1(a)(6), (b)(5) (West 2008)). "Knowledge is rarely shown by direct proof, and is usually established by circumstantial evidence." *Jaynes*, 2014 IL App (5th) 120048, ¶ 46. Where illicit material is found on premises within defendant's control, this supports an inference that defendant knew it was there unless other circumstances create a reasonable doubt. *Id.* In the context of child pornography, the element of knowledge requires the State to prove "that the images did not appear on the screen by accident but, rather, were sought out by the defendant because of their content." *Gumila*, 2012 IL App (2d) 110761, ¶ 48. To prove that possession was voluntary, the State must prove that defendant possessed the image or, as in this case, the depiction for a sufficient amount of time to terminate possession. 720 ILCS 5/11-20.1(b)(5) (West 2018).

¶ 34    A cached temporary internet file image of child pornography on a device under the defendant's sole control can lead to criminal liability for possession of the original image, the cached image, or both. *Gumila*, 2012 IL App (2d) 110761, ¶ 66. Possession is established if the defendant knowingly viewed the image on the internet while aware of the automatic caching of images. *Id.* Possession can also be established if the defendant retained the cached image for longer than necessary to terminate possession, and defendant searched for and obtained the original image for its content. *Id*.

¶ 35    The State concedes that the evidence failed to establish that (1) defendant searched for the images at issue in the charging instrument (see *Gumila*, 2012 IL App (2d) 110761, ¶ 48); (2) defendant was aware of the automatic caching of images (see *id.* ¶ 66); or (3) defendant had any ability to access or control the cache files on his phone (see *Jaynes*, 2014 IL App (5th) 120048, ¶ 46 (explaining that possession requires the exercise of dominion or control)). We agree.

¶ 36    As discussed previously, the extraction report revealed there was no data extracted from the phone indicating that defendant used search terms related to child pornography. Although the large volume of cache files containing depictions of child pornography was circumstantial evidence from which the court could reasonably infer that defendant did, at some point, seek out such images, there was no evidence that he intentionally searched for the specific depictions he was charged with possessing.

¶ 37    Moreover, it is clear from the evidence that defendant never exercised any actual dominion or control over the cached images he was charged with possessing. Defendant told Wallace he did not know what Wallace meant by a cache file, and McGuire's stipulated testimony established that, even if defendant was aware of the cache files, he did not have the ability to access them. See *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006) (explaining that absent "some other indication of dominion and control," it is improper to charge a defendant with possession of images stored in a device's cache files if defendant lacks knowledge of or access to and control over those files).

¶ 38    In addition, because there was no evidence to establish *when* either of the images at issue were viewed, there is no evidence as to how long they were in the cache files. The State was thus unable to establish that defendant retained the depictions for long enough to terminate possession. See *Gumila*, 2012 IL App (2d) 110761, ¶ 66; 720 ILCS 5/11-20.1(b)(5) (West 2018). Although

12

the amended information charged defendant only with possession of the depictions in the cache files, not the original images, because there was no evidence as to how long the images were viewed, the State was unable to establish that defendant viewed the original images long enough to terminate possession. See *Gumila*, 2012 IL App (2d) 110761, ¶ 66.

¶ 39　In view of this, we agree with defendant and the State that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt. We must therefore reverse his conviction outright without remanding the cause for a new trial. See *People v. Thompson*, 2017 IL App (3d) 160503, ¶ 17. As such, we need not address defendant's remaining arguments.

¶ 40　　　　　　　　　　　　　III. CONCLUSION

¶ 41　For the foregoing reasons, we reverse defendant's conviction.


¶ 42　Reversed.